# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

PAMELA LONGMIRE,
      Appellant,

v.

NUCLEAR REGULATORY
  COMMISSION,
      Agency.

DOCKET NUMBER
DC-0752-20-0460-I-2

DATE: August 25, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Karen J. Malachi and Peggy Jones Golden, Atlanta, Georgia, for the
    appellant.

Cathy Scott, Washington, D.C., for the agency.

Garett Dane Henderson and Vinh Hoang, Rockville, Maryland, for the
    agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the agency's removal decision and granted the appellant's affirmative

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

defenses of disability discrimination based on a failure to accommodate and harmful procedural error. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to clarify and supplement the administrative judge's findings regarding the appellant's affirmative defenses, we AFFIRM the initial decision.

## BACKGROUND

¶2　　The appellant was employed as a Project Manager with the agency's Office of Nuclear Material Safety and Safeguards. *See Longmire v. Nuclear Regulatory Commission*, MSPB Docket No. DC-0752-20-0460-I-1, Initial Appeal File (IAF), Tab 1 at 1, Tab 7 at 24. By a letter dated January 8, 2020, the agency proposed the appellant's removal based on a charge of absence without leave (AWOL), supported by 33 specifications covering the period from November 12, 2019, through January 2, 2020. IAF, Tab 1 at 6-10. The appellant provided a written response to the proposal with supporting documentation. IAF, Tab 7 at 45-62. After considering the appellant's response, the deciding official issued a decision that sustained the AWOL charge and all 33 specifications, removing the appellant from her position, effective February 21, 2020. IAF, Tab 1 at 17-22.

¶3    The appellant filed a Board appeal and requested a hearing.  IAF, Tab 1 at 2.  She raised affirmative defenses of discrimination on the bases of disability, age, and race, and alleged that the agency committed a prohibited personnel practice and engaged in harmful procedural error by removing her.  *Id.* at 3.  After holding the first 2 days of the requested hearing, the appeal was dismissed without prejudice to refiling.  IAF, Tab 55; *see* IAF, Tabs 50, 52.  The appeal was subsequently refiled, *see Longmire v. Nuclear Regulatory Commission*, MSPB Docket No. DC-0752-20-0460-I-2, Appeal File (I-2 AF), Tab 1, and after a third hearing day the administrative judge issued an initial decision reversing the removal action.  I-2 AF, Tab 4, Initial Decision (ID).  He concluded that the agency discriminated against the appellant based on a failure to accommodate her disability when it removed her, and so the agency action could not be sustained.  ID at 3-19; *see* I-2 AF, Tab 3.  The administrative judge also determined that the agency committed harmful error in the application of its procedures by failing to comply with its Management Directive and the collective bargaining agreement (CBA) when it denied the appellant reasonable accommodation.  ID at 21-23.  Finally, the administrative judge determined that the appellant failed to prove her affirmative defenses of disparate treatment disability discrimination and discrimination based on sex and race.  ID at 19-21.  Because the agency committed harmful procedural error and engaged in disability discrimination based on its failure to accommodate the appellant when it removed her, the administrative judge reversed the removal action.  ID at 1, 23.

¶4    The agency timely filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The appellant has filed a response in opposition to the petition for review, and the agency has filed a reply.  PFR File, Tabs 3, 5.

**DISCUSSION OF ARGUMENTS ON REVIEW**

<u>The administrative judge did not err in concluding that the agency discriminated against the appellant based on its failure to accommodate her disability.</u>

¶5    The administrative judge reversed the removal, finding that it was based on the agency's failure to accommodate the appellant's disability. ID at 3. On review, the agency argues that the administrative judge incorrectly concluded that the appellant proved this affirmative defense. PFR File, Tab 1 at 12-18, 23-31. Specifically, the agency argues that the administrative judge erred by: (1) neglecting to address how the agency's failure to accommodate the appellant's disability caused the charged misconduct; (2) determining that it failed to engage in the interactive process; (3) finding that the appellant was a qualified individual with a disability; and, (4) concluding that the appellant's request for full-time telework[2] did not constitute an undue hardship on the agency. *Id.* at 12-18, 23-31.

*Applicable legal standard*

¶6    The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act, which has incorporated the standards of the

---

[2] The parties refer to the appellant's request to work from home as a request for full-time telework, and Article 7 of the CBA, which governs telework, includes a provision that explicitly covers "Full-Time Telework." IAF, Tab 24 at 42-43. We note that the terms "telework" and "remote work" are distinct work arrangements, and are often improperly used interchangeably. U.S. Office of Personnel Management, 2021 Guide to Telework and Remote Work in the Federal Government at 11 (hereafter "OPM Guide to Telework and Remote Work in the Federal Government"), *available at* https://www.opm.gov/telework/documents-for-telework/2021-guide-to-telework-and-remote-work.pdf. In practice, telework "is a work arrangement that allows employees to have regularly scheduled days on which they telework and regularly scheduled days when they work in their agency worksite." *Id.* By contrast, remote work "is an alternative work arrangement that involves an employee performing their official duties at an approved alternative worksite away from an agency worksite, without regularly returning to the agency worksite during each pay period." *Id.* at 53. Here, although the appellant's request to work from her home full-time appears to fall within the definition of remote work in the OPM Guide to Telework and Remote Work in the Federal Government, because the parties considered the appellant's request as a request for "full-time telework" under the CBA we will refer to it as telework in this order.

Americans with Disabilities Act (ADA) as amended.  *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28.  Under the relevant provisions, it is illegal for an employer to "discriminate against a qualified individual on the basis of disability."  *Id.*; 42 U.S.C. § 12112(a).  A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without accommodation.  *Haas*, 2022 MSPB 36, ¶ 28; 42 U.S.C. § 12111(8); *see* 29 C.F.R. § 1630.2(m).  An agency is required to provide reasonable accommodation to an otherwise qualified individual with a disability, unless the agency can show that doing so would cause an undue hardship on its business operations.  42 U.S.C. § 12112(b)(5); *Haas*, 2022 MSPB 36, ¶ 28; *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 10 (2014).  Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions, or reassigning the employee to a vacant position whose duties the employee can perform.  *Clemens*, 120 M.S.P.R. 616, ¶ 10.

¶7        In the initial decision, the administrative judge determined the following: (1) the appellant was an individual with a disability based on her asthma, chronic rhinosinusitis, and allergy exacerbation conditions, which substantially limit her ability to breathe; (2) she was a qualified individual with a disability because she could safely and efficiently perform the essential functions of her position; (3) the decision to remove her was based on her disability insofar as the agency failed to engage in the reasonable accommodation interactive process or otherwise attempt to accommodate her before removing her; and (4) accommodating the appellant by permitting her to telework would not have caused the agency undue hardship.  ID at 4-19.  On review, the agency has not disputed the administrative judge's finding that the appellant is an individual with a disability, so we need not address that finding.  We turn now to consider each of the remaining findings.

*We agree with the administrative judge's finding that the appellant was a qualified individual with a disability.*

¶8        As previously noted, a qualified individual with a disability is a person who can perform the essential functions of her position with or without accommodation.  42 U.S.C. § 12111(8).  The Board has indicated that the core duties of a position are synonymous with the essential functions of a position under the ADA, as amended, i.e., the fundamental job duties of the position, not including marginal functions.  *Haas*, 2022 MSPB 36, ¶ 21; *Clemens*, 120 M.S.P.R. 616, ¶ 6; 29 C.F.R. § 1630.2(n)(1).  A job duty may be considered essential for a number of reasons, including, among other things, because the reason the position exists is to perform that function, because of the limited number of employees available among whom the performance of that job function can be distributed, or because the function is highly specialized so that the incumbent is hired for his or her expertise or ability to perform the particular function.  *Haas*, 2022 MSPB 36, ¶ 21; *Clemens*, 120 M.S.P.R. 616, ¶ 6.  In determining whether a particular function is "essential," the Board will consider a number of factors, such as the employer's judgment as to which functions are essential, written position descriptions, the amount of time spent performing the function, and the consequences of not requiring the incumbent to perform the function. *Clemens*, 120 M.S.P.R. 616, ¶ 6.

¶9        On review, the agency argues that the administrative judge failed to give adequate deference to agency management's assessment of the appellant's essential job duties, citing precedent from the Equal Employment Opportunity Commission (EEOC) and Federal appellate courts concerning the substantial deference given to employers to determine an employee's essential job duties. PFR File, Tab 1 at 23-25.  The agency also argues that the administrative judge inappropriately credited the appellant's testimony concerning her job duties and failed to acknowledge testimony by comparator employees that the frequency with which certain job duties are performed varies among the different agency

branches. *Id.* at 26-27. Finally, the agency argues that because there has not been an assessment of the appellant's medical status and limitations since September 2018, it is impossible to determine whether she can perform the essential functions of her position. PFR File, Tab 1 at 22-30.

¶10 To the extent the agency is challenging the administrative judge's decision to credit the appellant's testimony concerning the nature of her job duties over that of her former first-line supervisor, the Board has regularly held that it will not disturb an administrative judge's findings when he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987). Here, the administrative judge made credibility determinations based on his observation of each witness's demeanor at the hearing, and we decline to disturb those findings on review. *See* ID at 16-17, n.1 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (identifying the factors that an administrative judge must consider in making credibility determinations)); *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (concluding that the Board generally must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing and may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

¶11 Regarding the agency's specific argument that the administrative judge failed to consider the testimony of the purported comparators concerning the role public meetings played in the appellant's branch, the administrative judge did identify and discuss testimony from each of the comparators regarding the role public meetings played in their respective branches. ID at 18-19 (citing Aug. 19, 2020 Hearing Transcript (HT 2) at 190-92, 216, 229-31, (testimony of purported comparators); I-2 AF, Oct. 23, 2020 Hearing Transcript (HT 3) at 225-26

(testimony of purported comparator)). The administrative judge's decision not to specifically discuss the testimony from the comparators—none of whom were assigned to the appellant's branch—concerning the frequency of public meetings in the *appellant's* branch, does not mean that he did not consider that testimony and is not a basis for overturning his well-reasoned findings on review. *See Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶ 25 (2016) (concluding that the administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision), *clarified by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-24; *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

¶12 Regarding the agency's assertion that, based on existing EEOC and Federal appellate court precedent, the administrative judge failed to give adequate deference to its determination about which of the appellant's duties were essential, we disagree. Although the decision cited by the agency held that the inquiry into the essential functions of an employee's job should not "second guess the employer or [] require the employer to lower company standards," the court also held that the deference granted to agencies is "not absolute," and that the agency's assessment is one of several factors to be considered in determining which of the employee's job functions are essential. PFR File, Tab 1 at 24-25; *Vargas v. DeJoy*, 980 F.3d 1184, 1188 (7th Cir. 2020); *see Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020) (noting that an employer's assessment of an employee's job duties is entitled to "considerable deference" from the courts, but also acknowledging that the ADA states that other factors are also relevant to the question, and that the court's assessment must "consult the full range of evidence bearing on the employer's judgement. . ."); 29 C.F.R. § 1630.2(n)(3) (identifying additional factors to be considered in determining whether a job duty is "essential," including whether the position

exists to perform the function, whether a limited number of employees can perform the function, and whether the function is highly specialized).

¶13 Based on the appellant's testimony describing her regular job duties and the frequency with which she performed them, as well as a review of the appellant's position description, the administrative judge determined that the appellant could perform the essential functions of her position while teleworking. ID at 14-15; Hearing Compact Disc (HCD) 3 at 138-40 (testimony of appellant); IAF, Tab 26 at 4. He highlighted testimony from the appellant stating that she had not performed the two contested job functions since 2012 and 2016 respectively, as well as testimony from the appellant's former first-line supervisor that did not indicate that the appellant had any issues completing her job duties while teleworking. ID at 15-17; *see* IAF, Aug. 18, 2020 Hearing Transcript (HT 1) (testimony of appellant's former first-line supervisor); HT 3 at 123-28 (testimony of appellant). Contrasting that testimony, the administrative judge cited testimony from the appellant's first-line supervisor acknowledging that he was not aware whether the appellant had ever performed either of the challenged job functions, and testimony from the agency reasonable accommodation coordinator (RAC) acknowledging that the essential functions analysis considers the actual duties the employee performs, not just the generic duties described in an employee's position description. ID at 17; HT 1 at 116-17, 125-26 (testimony of appellant's first-line supervisor; HT 3 at 61-63). In the absence of "sufficiently sound" reasons for doing so, we discern no basis upon which to disturb the administrative judge's credibility determinations in this regard or to reweigh the evidence or substitute our assessment of the record evidence for his. *Haebe*, 288 F.3d at 1302.

¶14 Finally, we find no merit in the agency's argument that because the assessment of the appellant's limitations provided by Federal Occupational Health (FOH) was sparse or outdated, it was not possible to assess whether she

could perform the essential functions of her position.[3] PFR File, Tab 1 at 28-30. Because we ultimately agree with the administrative judge's finding that the agency's failure to adequately engage in the interactive process is what caused the failure to accommodate the appellant's disability, *see infra ¶¶* 15-24, to whatever extent the agency now asserts that it was hindered in its ability to adequately assess the appellant's medical limitations, it was the agency's own actions that caused the hindrance. Accordingly, we conclude that the administrative judge properly considered the relevant factors based on the entire record. We agree that the appellant was a qualified individual with a disability because she could perform the essential functions of her position with or without accommodation.

> *The administrative judge's finding that the agency failed to adequately engage in the interactive process is supported by the record.*

¶15     The agency also challenges the administrative judge's finding that it failed to engage in the interactive process by failing to properly process the appellant's requests for telework. PFR File, Tab 1 at 13-17. Specifically, the agency argues that it made repeated efforts to engage in the interactive process and instead it was the appellant who failed to engage in the interactive process in good faith.

---

[3] To the extent the agency suggests, for the first time on review, that the appellant's traumatic brain injury (TBI) diagnosis affected her ability to complete her job functions and that an assessment of her limitations is necessary in light of her TBI condition, the agency did not raise this argument below and we need not consider it on review. PFR File, Tab 1 at 28-30. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (noting that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence); *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (same); 5 C.F.R. § 1201.115(d). Additionally, the record reflects that the agency RAC closed the appellant's request for reasonable accommodation in connection with her TBI claim after the appellant failed to provide supporting medical documentation, and the administrative judge did not rely on the appellant's TBI condition as a part of his finding that the agency failed to accommodate the appellant's disability. HT 2 at 45-46 (testimony of agency RAC); IAF, Tab 22 at 23-32; *see* ID at 6, 9-13.

*Id.* As the administrative judge observed, once an employee informs the agency that she requires an accommodation, the agency must engage in an interactive process to determine an appropriate accommodation. *Kirkland v. Department of Homeland Security*, 119 M.S.P.R. 74, ¶ 18 (2013); *see Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 17 (2006) (finding an employee need only let her employer know in general terms that she needs accommodation for a medical condition). A request for reasonable accommodation is the first step in the informal, interactive process between the individual and the employer. *See* EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (EEOC Enforcement Guidance), Question 5, Notice No. 915.002 (Oct. 17, 2002), available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada. "The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. part 1630, appendix, § 1630.9. Additionally, courts have generally required both parties to engage in this process in good faith. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000); *Collins v. U.S. Postal Service*, 100 M.S.P.R. 332, ¶ 11 (2005). Nevertheless, the failure to engage in the interactive process alone does not violate the Rehabilitation Act; rather the appellant must show that this omission resulted in failure to provide reasonable accommodation. *Clemens*, 120 M.S.P.R. 616, ¶ 17.

¶16    In the initial decision, the administrative judge relied on testimony from the agency's RAC, who testified at length concerning the agency's reasonable accommodation process. ID at 10-11 (citing HT 2) (testimony of agency RAC)). The agency RAC testified that, pursuant to the agency's reasonable accommodation policy, the agency should begin processing an employee's request for accommodation no later than 5 days after the request is initiated, and the requesting employee's supervisor must discuss the request with a Human

Resources (HR) representative. The RAC testified that she did not process any reasonable accommodation requests for the appellant during the period from September 24, 2019, through January 30, 2020. ID at 10-11. Observing that the appellant requested full-time telework on several occasions in 2019, including on September 24, 2019, October 8, 2019, November 6, 2019, and December 30, 2019, the administrative judge concluded that the none of the requests were forwarded to the RAC as required under the reasonable accommodation policy.

¶17    On review, the agency argues that it engaged in the interactive process in good faith. It points to the fact that the appellant was provided with an enclosed office and an air purifier in October 2017, and cites an October 18, 2019 email from the appellant's first-line supervisor, asking the appellant whether her current accommodations were adequate and requesting that she provide appropriate medical documentation to support her absences. PFR File, Tab 1 at 13-15; *see* IAF, Tab 23 at 43-44. The agency notes that the appellant failed to provide the requested medical documentation when asked and otherwise failed to provide evidence demonstrating that her prior accommodation of an enclosed office with an air purifier was not an effective accommodation. PFR File, Tab 1 at 15-17. The agency also argues that the administrative judge incorrectly stated that the appellant's first-line supervisor proposed her removal 1 week after he received her accommodation request, noting that the email cited by the administrative judge had not been addressed to the supervisor. *Id.* at 16; *see* ID at 11-12.

¶18    As an initial matter, there is no merit to the agency's claim that the administrative judge failed to address that the appellant had been provided an accommodation for her respiratory condition that was "deemed to be effective by FOH and the [a]ppellant's treating physicians," or alternatively, that there was no medical evidence demonstrating that the existing accommodation was ineffective. PFR File, Tab 1 at 14, 16-17. The administrative judge specifically addressed these claims below, concluding that the identified accommodation, the in-office air purifier, was "clearly ineffective" based on the "overwhelming evidence" the

appellant provided demonstrating that she was unable to work in her office, even with the offered accommodation. ID at 17. The administrative judge made this determination based on his review of the evidence as a whole and his observation of the demeanor of the witnesses testifying at the hearing, and we decline to disturb those findings on review. *See* ID at 16-17, n.1 (citing *Hillen*, 35 M.S.P.R. at 458); *Haebe*, 288 F.3d at 1301.

¶19     Additionally, although the document the agency cites from the FOH physician noted that the in-office purifier "would be a medically reasonable way" of accommodating the appellant, he also observed that the appellant needed to be in an "extremely clean office environment" to work effectively and that telework as an accommodation "would likely be effective as well." IAF, Tab 22 at 17. In a later correspondence to the agency RAC regarding the continuing severity and pervasiveness of the appellant's condition, the FOH physician noted that the appellant's condition was "quite severe" and that if she continued to complain of symptoms even when working in a private office with an air purifier, "she should be allowed to continue to telework." *Id.* at 65. The appellant also provided additional medical documentation to agency officials dated August 2018 through January 2020, clearly indicating that her existing accommodations were not working and that she should not return to the office. IAF, Tab 7 at 50-56; HCD 3 at 36-38 (testimony of the appellant).

¶20     We also find no reason to disturb the administrative judge's finding that the agency failed to properly engage in the interactive process. ID at 9-13. The administrative judge based his determination on the RAC's failure to process any of the appellant's requests between September 24, 2019, and January 30, 2020, as requests for reasonable accommodation, as well as the first-line supervisor proposing the appellant's removal without giving the agency's telework

coordinator adequate time to review the telework request denial.[4] ID at 12. Similarly, we are not persuaded by the agency's argument that the appellant's first-line supervisor's request for medical documentation and the appellant's failure to provide the requested information constituted clear examples of the agency's good faith effort to engage in the interactive process and appellant's failure to engage in the interactive process in good faith. PFR File, Tab 1 at 14-15. As the agency RAC testified, after the interactive process was triggered, it was the RAC's responsibility to coordinate with the appellant regarding the request, including requesting any necessary supporting medical documentation, so the appellant's failure to provide medical documentation to her supervisor does not undermine the administrative judge's finding that the agency failed to properly engage in the interactive process.[5] PFR File, Tab 1 at 15-16; ID at 12; HT 2 at 88-89 (testimony of agency RAC).

¶21 Finally, the agency disputes the administrative judge's finding that the appellant's supervisor issued the removal proposal "one week after he received the [a]ppellant's [December 30, 2019] request for accommodation." We agree with the agency that there is no evidence in the record indicating that the appellant's first-line supervisor ever received the December 30, 2019 email, as the email was not addressed to the supervisor and there is no testimony in the

---

[4] As noted *supra* footnote 2, the CBA includes a provision governing requests for "full-time telework" that appears to be applicable to the appellant's requests to work from home. IAF, Tab 24 at 42-43 (Article 7.10). Under Article 7.3.5 of the CBA, if an employee requests a telework arrangement in order to enable her to perform the full range of her official duties, such a request is a request for reasonable accommodation that must be submitted to the agency RAC. IAF, Tab 24 at 38. Here, management officials did not follow this provision, and this failure appears to have caused the RAC's failure to engage in the interactive process.

[5] Although not addressed in the initial decision, the agency's reasonable accommodation procedures specify that the agency must provide an interim accommodation to allow the employee to perform some or all of the essential functions of her position while the accommodation request is under consideration, which the agency also failed to do. IAF, Tab 24 at 145.

record concerning him having received it. PFR File, Tab 1 at 16; HT 1 at 163-64 (testimony of appellant's first-line supervisor). Nevertheless, there is no dispute that the supervisor became aware of the appellant's request approximately 2 weeks later, and that the supervisor still failed to provide the information necessary for the telework coordinator to act on the appellant's reconsideration request prior to the removal decision. ID at 11-12; IAF, Tab 25 at 36-44; HT 1 at 163-65. Further, the agency has not disputed the administrative judge's finding that agency officials, including the appellant's first-line supervisor, failed to properly act on the appellant's other requests for accommodation during the period from September 24, 2019, through January 30, 2020. ID at 10-12.

¶22     Accordingly, we find no error in the administrative judge's determination that the agency failed to adequately engage in the interactive process by failing to process any of the appellant's repeated requests for telework as requests for reasonable accommodation, and that this failure resulted in the failure to provide the appellant with reasonable accommodation. ID at 9-13; *see Clemens*, 120 M.S.P.R. 616, ¶ 17.

> *The administrative judge did not err by concluding that accommodating the appellant would not cause the agency undue hardship.*

¶23     The agency also argues that the administrative judge erred by concluding that accommodating the appellant would not cause the agency undue hardship. PFR File, Tab 1 at 30-31; *see* ID at 17-19. Specifically, the agency argues that, because the appellant failed to engage in the interactive process, the agency was unable to complete an individualized assessment of appellant's needs and restrictions that would serve as the basis for determining an appropriate accommodation. PFR File, Tab 1 at 30-31.

¶24     As the administrative judge noted, after the appellant requested and was denied permanent telework through the agency's ordinary telework policy, the appellant requested reconsideration of that decision through the telework

coordinator on December 30, 2019, noting that her disability prevented her from working in the office and that her pulmonologist recommended that she telework indefinitely. IAF, Tab 25 at 29; *see* ID at 10-11. As a part of the reconsideration process, the telework coordinator sent a set of questions to both the appellant and her first-line supervisor concerning the nature of the appellant's job duties. IAF, Tab 25 at 33-43; HCD 2 at 154-55 (testimony of agency telework coordinator). After reviewing the first set of responses from each party, the telework coordinator sent a follow-up set of questions to the appellant's supervisor. IAF, Tab 25 at 40; HCD 2 at 156-59 (testimony of agency telework coordinator). The appellant's supervisor did not respond to the follow-up set of questions before the appellant's removal was effectuated on February 21, 2020, and so the telework coordinator was unable to act on the appellant's reconsideration request prior to her removal. IAF, Tab 25 at 44-45, 55; HT 2 at 157-58, 177-78 (testimony of agency telework coordinator).

¶25    In those follow-up questions, the telework coordinator sought clarification about factors that would have aided the agency in determining whether the appellant's requested accommodation would cause the agency an undue hardship, including the frequency with which the appellant completed the job duties her supervisor determined were not portable, and potential alternative accommodations. IAF, Tab 25 at 40; HT 2 at 168-75, 177-79 (testimony of agency telework coordinator) (noting that questions sent to the appellant's supervisor were intended to assist the agency in determining whether and to what extent the appellant's full-time telework request would cause an undue burden on the agency, and to what extent the appellant's non-portable duties could be redistributed within the branch without causing disruption to the agency's operations).

¶26    The agency bears the burden of production to show that a reasonable accommodation would impose an undue hardship on the agency. *Henry v. Department of Veterans Affairs*, 100 M.S.P.R. 124, ¶ 15 (2005). Because the

appellant's supervisor never provided responses to these follow-up questions and failed to properly process the appellant's other requests for reasonable accommodation, to whatever extent the agency was hindered in its ability to assess the potential hardship that accommodating the appellant would have had on the agency's operations, it was a problem of the agency's own creation. Accordingly, we agree with the administrative judge's finding that the agency failed to show that accommodating the appellant's disability would impose an undue hardship on the agency's operations. *Smith v. U.S. Postal Service*, 113 M.S.P.R. 1, ¶ 8 (2009) (concluding that the agency failed to meet its burden of proving that accommodating the appellant would impose an undue hardship); 29 C.F.R. § 1630.9(a); *see* ID at 13, 17-19.

The appellant established that the agency's action was based on the agency's failure to accommodate her disability.

The agency asserts that the administrative judge treated the appellant's disability discrimination claim as the central question in the case, rather than as an affirmative defense, and "unless the agency's actions regarding her accommodation were the cause of her misconduct," the agency's actions should not excuse it. PFR File, Tab 1 at 12. The agency posits that the appellant was absent from duty on the days at issue in the AWOL charge, she ignored inquiries to request leave or otherwise communicate with management, and the initial decision failed to address how the agency's purported failure to provide the appellant telework as an accommodation excuses her misconduct. *Id.* at 13.

An appellant alleging disability discrimination based on a failure to accommodate must show that the action appealed was "based on" her disability. *Kirkland v. Department of Homeland Security*, 119 M.S.P.R. 74, ¶ 18 (2013). As noted above, the AWOL charge upon which the agency based its removal action was supported by 33 specifications covering the period from November 12, 2019, through January 2, 2020, and the appellant has submitted evidence showing that existing accommodations had been ineffective and she was unable to physically

work in the office during that period due to her disability. Further, the appellant requested full-time telework on several occasions in 2019, including on September 24, 2019, October 8, 2019, November 6, 2019, and December 30, 2019, and we have found that the agency failed to respond to these requests as required by the interactive process. Considering these findings, as well as the determination that the appellant was able to perform the essential functions of her position with the accommodation of telework, we find no merit in the agency's argument that its failure to accommodate the appellant did not cause the charged misconduct. To the contrary, we find that the agency's failure to provide the appellant with a reasonable accommodation did cause her absences during the period at issue, and we therefore conclude that the appellant has met her burden to show that the removal action was based on her disability.

Conclusion

¶29    For the foregoing reasons, we agree with the administrative judge's conclusion that the agency discriminated against the appellant based on its failure to accommodate her disability, and thus the removal decision cannot be sustained.

We affirm the administrative judge's findings regarding the appellant's disparate treatment disability discrimination, race discrimination, and sex discrimination claims.

¶30    After the initial decision was issued, the Board issued an Opinion and Order clarifying the standard and methods of proof for disparate treatment discrimination claims arising under both Title VII and the Rehabilitation Act. *Pridgen*, 2022 MSPB 31, ¶¶ 19-25, 35, 40. Having reviewed the relevant portions of the initial decision, we find that the administrative judge's analysis was consistent with *Pridgen*. ID at 19-21. Because the appellant does not contest the administrative judge's findings on her disparate treatment claims, we affirm these findings on review.

<u>To the extent that the appellant previously raised affirmative defenses of reprisal for requesting reasonable accommodation and discrimination based on age, she effectively abandoned those claims.</u>

¶31  In her response to the administrative judge's affirmative defense order, the appellant identified her affirmative defenses as including, among other things, an allegation that she was "retaliated against as a result of her disability *and request for accommodation*." IAF, Tab 17 at 8 (emphasis added). This could reasonably be interpreted as a claim of reprisal for requesting reasonable accommodation. Nevertheless, the administrative judge did not include this as an issue for adjudication in the prehearing conference summary nor did he render findings on this claim in the initial decision. IAF, Tab 31 at 2-3; ID at 3-23.

¶32  Aside from this single apparent reference to reprisal for requesting reasonable accommodation in her affirmative defense order response, the appellant, who was represented by an attorney, did not raise this claim in any of the other pleadings in the record below and did not object to the administrative judge's failure to include this as an issue to be determined at hearing, nor does she identify it on review. PFR File, Tab 3. Applying the relevant factors, we find that to the extent the appellant previously attempted to raise this affirmative defense, she effectively abandoned it. *See Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶¶ 17-18 (identifying a nonexhaustive list of factors the Board should consider in assessing whether a previously-raised affirmative defense claim was abandoned or waived, including the following, among others: (1) the degree to which the appellant continued to pursue her affirmative defense in the proceedings below after initially raising it; (2) whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when she was specifically afforded an opportunity to object and the consequences of her failure were made clear; (3) whether the appellant raised her affirmative defense or the administrative judge's processing of the

affirmative defense claim in her petition for review; and (4) whether the appellant was represented during the course of her appeal).

¶33    Finally, as previously noted, the appellant also identified discrimination based on age as one of her affirmative defenses in her initial appeal. IAF, Tab 1 at 3. Although the administrative judge acknowledged that the appellant raised this claim in her initial appeal, he did not address it in the initial decision. *See* ID at 2. After identifying this claim on her initial appeal form, the appellant, who obtained legal representation soon after filing her appeal, *see* IAF, Tab 14 at 4, failed to identify the age discrimination claim in her response to the administrative judge's affirmative defense order, *see* IAF, Tab 17. She also did not file an objection to the administrative judge's order summarizing the issues to be decided in the appeal, to the exclusion of all others, which did not include this claim. *See* IAF, Tab 31. Nor did she identify it in any of her prehearing submissions, *see* IAF, Tabs 29, 33-38, or address it during the hearing,[6] *see* IAF, Tabs 50, 52; I-2 AF, Tab 3. Additionally, she did not raise the administrative judge's failure to adjudicate this affirmative defense claim in her response to the agency's petition for review. *See* PFR File, Tab 3. Accordingly, we conclude that to the extent the appellant attempted to raise an affirmative defense of discrimination based on age, she effectively abandoned that claim. *See Thurman*, 2022 MSPB 21, ¶¶ 17-18.[7]

---

[6] During testimony from one of the appellant's purported comparators, the agency objected to a question concerning the comparator employee's date of birth and the administrative judge questioned the relevance of the testimony, asking "[t]his is not an age discrimination case, is it?", in response to which the appellant's attorney agreed to withdraw the question, supporting our conclusion that this claim was abandoned. *See* HT 2 at 182-83 (testimony of appellant's comparator).

[7] An appellant's harmful procedural error claim is moot when, as here, she is already entitled to all of the relief she would obtain if she were to prevail on that claim. *Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 34. Accordingly, we need not address the agency's assertions in its petition for review that the administrative judge erred in finding that the agency committed harmful procedural errors.

**ORDER**

¶34       We ORDER the agency to CANCEL the removal and to retroactively restore the appellant and to restore the appellant effective February 21, 2020.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶35       We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶36       We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶37       No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶38       For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation

necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:            /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.      Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.      The following information must be included on AD-343 for Restoration:

     a.      Employee name and social security number.
     b.      Detailed explanation of request.
     c.      Valid agency accounting.
     d.      Authorized signature (Table 63).
     e.      If interest is to be included.
     f.      Check mailing address.
     g.      Indicate if case is prior to conversion.  Computations must be attached.
     h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.      Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.      Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.      Outside earnings documentation statement from agency.
4.      If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.      Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.      If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.      If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

     a.      Must provide same data as in 2, a-g above.
     b.      Prior to conversion computation must be provided.
     c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.